DON J. NEAL, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Neal v. Commissioner
Docket Nos. 31682-83, 34279-83.
United States Tax Court
T.C. Memo 1987-45; 1987 Tax Ct. Memo LEXIS 45; 52 T.C.M. (CCH) 1473; T.C.M. (RIA) 87045; January 21, 1987. *45 Held, P's claimed farm losses for 1979 and 1981 disallowed for failure of substantiation. Don J. Neal, pro se. Lynda B. Cheung, for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in petitioner's Federal income tax for *46 the taxable years 1979 and 1981 in the respective amounts of $21,237.00 and $341.00. After concessions, the only issue for decision is whether petitioner engaged in the activity of farming for profit during 1979 and 1981. FINDINGS OF FACT Some of the facts have been stipulated and are so found. This reference incorporates the stipulation of facts and attached exhibits. Petitioner resided in Azusa, California, when he filed the petitions in this case. Petitioner is a certified public accountant and has no educational qualifications or practical background in farming. He lived in Saudi Arabia from September, 1976 to July, 1981, where he worked for Bechtel until April, 1979, and thereafter for Saudi Asphalt until 1981, when he went to the Philippines for another year and a half. Petitioner reported income from wages of $70,550 on his 1979 Federal income tax return and $16,832 from wages on his 1981 return. Petitioner and his former wife, Patricia, purchased the Al Jamal Farms located in Canon, Georgia, in June, 1978, at which time they were residing in Riyadh, Saudi Arabia. The farm was purchased as their principal residence and as a means of supplementing their income *47 when petitioner returned from overseas. However, petitioner and Patricia did not intend to begin operations on the farm immediately after buying it, but planned to stay overseas for another three or four years. Patricia did not wish to continue living in Saudi Arabia after petitioner changed jobs in 1979. Patricia and the five-year old daughter of petitioner returned to the United States and lived on the farm from 1979 to 1981. In 1981 petitioner and Patricia separated and were subsequently divorced. The farm was sold in 1982 at a loss of about $30,000. Certain farm equipment, including a tractor, were also sold in 1982. Petitioner filed a 1979 joint Federal income tax return with Patricia, on which was claimed a farm loss deduction of $14,841.00. Petitioner filed a "head of household" return for 1981 on which was claimed a farm loss deduction of $8,232. Patricia is not a party to this case and did not testify at trial. OPINION Respondent asserts that petitioner has failed to establish that he sustained any farm losses in the years in question and that, even if he had done so, he has nevertheless failed to show that he was engaged in farming for profit, as required by *48 section 183. [1]
Petitioner asserts that the farm was acquired in June, 1978, by him and his then wife, Patricia, with the intent of engaging in farming. Petitioner's evidence consists of stipulated copies of tax returns and deficiency notices and his own testimony. He filed a Trial Memorandum (with copy served upon respondent) pursuant to a direction by the Court, to which he made reference during his oral testimony. Since petitioner was available for cross-examination at trial, including cross-examinations to facts stated in the trial memorandum, the Court deems it permissable, in this particular instance, to consider these written factual recitations by petitioner as part of his testimony. In the trial memorandum, petitioner states the history of his connection with the farm as follows: The farm was purchased in June, 1978, at which time I and my family were residing in Riyadh, Saudi Arabia. It was purchased as our future principal residence and a means of supplementing our income when *49 I returned from overseas. We rented the house to a non-related third party and returned to Saudi Arabia. In December, 1978, we returned to the U.S. on Rest & Recreation to find the house badly damaged by the renter and my wife remained behind to effect repairs and re-rent the house. She had not returned in April, 1979 when I changed jobs from Bechtel to Saudi Asfalt [sic] Construction Co. and in late May I returned to the U.S., between assignments. While I was in the U.S., my wife decided not to return to Saudi Arabia on the new assignment. We decided that we could not afford to keep two households and suffer the rental loss without another source of income. My wife, who had three years of pre-vetenarian [sic] schooling at University of Georgia and I agreed that raising cattle and hay to begin with and later building chicken growing facilities would be the most profitable use of our small holding (113 acres). The hay and cattle operation was to start first as the cost was smallest. The whole program was to have the farm self-supporting by the end of 1982 so I could return to the much lower salary I could earn in the Southeastern U.S. To do this, we would have to have *50 significant farm income and some profits by 1982. The 60 plus acres of improved pasture had not been taken care of by the previous owner for about ten years.They were badly in need of refurbishing and intensive care. A new Ford tractor along with the necessary attachments was purchased to accomplish this along with proper equipment for harvesting hay. With the help of the county extension agent, my wife began a program to bring the existing pastures to condition for a hay crop in 1980 and to support livestock by late 1980 or early 1981. The program was adhered to until mid 1981, including the laying in of the early 1981 hay crop and purchase of some cattle. I have no knowledge of the disposition of the hay or the cattle, as the farm was stripped bare of everything but the buildings when I returned for the divorce proceedings in December of 1981. We accept petitioner's testimony that he intended to engage in farming. We need not consider the question of profit motive, however, because petitioner has simply failed to substantiate any of the details of the farm operation which would permit the allowance of any deductions going to make up the farm loss of $14,841 claimed on Schedule *51 F of his 1979 return and the $8,232 loss claimed on his 1981 return. Petitioner reported the following items on Schedule F of his returns: ITEM
1979
1981
Conservation program
payments
$228.00
Hay and straw
$ 400.00
Machine work
800.00
Gross profits
$228.00
$1,200.00
Labor hired
718.00
200.00
Repairs, maintenance
638.00
282.00
Interest
8,485.00
4,056.00
Feed purchased
338.00
Seeds, plants purchased
196.00
Fertilizer, etc.
497.00
Supplies
129.00
345.00
Gasoline, etc.
367.00
133.00
Taxes
327.00
553.00
Insurance
341.00
399.00
Utilities
34.00
61.00
Depreciation
2,999.00
$3,403.00
Petitioner produced no testimony, documents, stipulations or any other evidence to substantiate any of the reported items. Amounts paid for interest and certain taxes, if properly substantiated, would ordinarily be deductible under sections 163 and 164, respectively, regardless of whether petitioner has met the profit motive standard of section 183. Section 183(b)(1); , affd. . The parties have advised the Court that certain unspecified *52 issues have been settled, although the Court has not been advised as to the identity of the settled issues. To the extent settled issues do not include the items going to make up the claimed farm loss deductions, respondent's determination is sustained. To reflect settled issues, Decision will be entered under Rule 155.
Footnotes
1. All section references are to sections of the Internal Revenue Code in effect for the years in question. All rule references are to the Tax Court Rules of Practice and Procedure.↩